**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| ANTHONY CHARLES KEENE, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:21CV289 |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant.[1] | ) | |

**MEMORANDUM OPINION AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Anthony Charles Keene, Jr., brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 8 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 12, 15; see also Docket Entry 13 (Plaintiff's Brief); Docket Entry 16 (Defendant's Memorandum); Docket Entry 18 (Plaintiff's Reply)). For the reasons that follow, the Court should enter judgment for Defendant.

---

[1] President Joseph R. Biden, Jr., appointed Kilolo Kijakazi as the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew M. Saul as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

# I. PROCEDURAL HISTORY

Plaintiff applied for DIB (Tr. 128-29), alleging a disability onset date of June 1, 2011 (<u>see</u> Tr. 128).[2] Upon denial of that application initially (Tr. 39-51, 68-71) and on reconsideration (Tr. 52-67, 73-76), Plaintiff (proceeding pro se) appealed to an Administrative Law Judge ("ALJ"), but indicated that he "d[id] not wish to appear at a hearing and [] request[ed] that a decision be made based on the evidence in [his] case" (Tr. 77) and, shortly afterwards, formally waived his right to a hearing before the ALJ (Tr. 83-84). The ALJ subsequently sent interrogatories to a vocational expert ("VE") (Tr. 225-29), to which the VE responded (Tr. 232-36). Following the ALJ's conveyance of the VE's interrogatory responses to Plaintiff (Tr. 237-38) and Plaintiff's written response (Tr. 38), the ALJ ruled that Plaintiff did not qualify as disabled under the Act (Tr. 17-31). The Appeals Council thereafter denied Plaintiff's request for review (Tr. 10-14, 124-27), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1. [Plaintiff] last met the insured status requirements of the . . . Act on December 31, 2019.

---

[2] Plaintiff subsequently amended his alleged onset date to December 31, 2014 (<u>see</u> Tr. 40-41, 53-54), due to earnings from substantial gainful activity after his original alleged onset date (<u>see</u> Tr. 151).

2.    [Plaintiff] did not engage in substantial gainful activity during the period from his alleged onset date of December 31, 2014 through his date last insured of December 31, 2019.

3.    Through the date last insured, [Plaintiff] had the following severe impairments: bipolar disorder, schizoaffective disorder, substance abuse disorder, post-traumatic stress disorder (PTSD), and attention deficit hyperactivity disorder.

. . .

4.    Through the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5.    Through the date last insured, [Plaintiff] had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he has the ability to understand, remember and carry out instructions for simple routine tasks not performed at a production rate pace i.e. not subject to strict time deadlines and/or quota requirements.  He can maintain attention and concentration for two-hour periods assuming normal 15 minute breaks in the morning and afternoon and a 30 minute lunch break. [He] can interact with coworkers and supervisors frequently but can have only occasional casual contact with the public.  He can adapt to workplace changes involving simple work-related decisions.

. . .

6.    Through the date last insured, [Plaintiff] was unable to perform any past relevant work.

. . .

10.  Through the date last insured, and considering [Plaintiff]'s age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that [he] could have performed.

3

. . .

    11. [Plaintiff] was not under a disability, as defined in the . . . Act, at any time from December 31, 2014, the alleged onset date, through December 31, 2019, the date last insured.

(Tr. 22-31 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

### A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402

4

U.S. 389, 401 (1971)).  "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted).  "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted).  "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted).  "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to

engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id.

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity [('RFC')] to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174

---

[3] The Act "comprises two disability benefits programs. [DIB] provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

6

F.3d 473, 475 n.2 (4th Cir. 1999).[4]  A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry.  For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied.  The second step determines if the claimant is 'severely' disabled.  If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177.  Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." Id. at 179.[5] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled.  See id. at 179-80.  However, if the

---

[4]  "Through the fourth step, the burden of production and proof is on the claimant.  If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[5]  "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)).  The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[6]

## B. Assignments of Error

Plaintiff asserts that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ's failure to acknowledge and evaluate the opinions of the [state a]gency psychological consultants who found [Plaintiff] socially more limited than [the ALJ] did is harmful error and her decision is not supported by substantial evidence" (Docket Entry 13 at 12 (bold font and single-spacing omitted); see also Docket Entry 18 at 1-4); and

---

[6] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

8

2) "[t]he ALJ failed to appropriately evaluate the [Department of Veterans Affairs ('VA')] disability rating decision" (Docket Entry 13 at 17 (bold font and single-spacing omitted); see also Docket Entry 18 at 5-8).

Defendant contends otherwise and seeks affirmance of the ALJ's decision.  (See Docket Entry 16 at 5-14.)

## 1. **Administrative Findings of the State Agency Psychological Consultants**

Plaintiff's first issue on review argues that "[t]he ALJ's failure to acknowledge and evaluate the opinions of the [state agency] psychological consultants who found [Plaintiff] socially more limited than [the ALJ] did is harmful error and her decision is not supported by substantial evidence."  (Docket Entry 13 at 12 (bold font and single-spacing omitted); see also Docket Entry 18 at 1-4.)  In particular, Plaintiff notes that the consultants "found that [Plaintiff wa]s moderately limited in maintaining social functioning and would perform best in settings requiring minimal social interaction" (Docket Entry 13 at 12 (bold font and single-spacing omitted) (referencing Tr. 46, 48, 60, 64)), but points out that "the ALJ did not acknowledge or mention the opinions of the . . . consultants or evaluate their persuasiveness, despite the requirement that [the ALJ] do so" (id. at 15-16 (citing 20 C.F.R. § 404.1520c(a))).  Plaintiff further emphasizes that "[t]he ALJ's RFC assessment limits [Plaintiff] to frequent interaction with coworkers and supervisors" (id. at 16 (citing Tr. 24)), as well as

9

that "[f]requent means 'occurring from one-third to two-thirds of the time'" (id. (quoting Social Security Ruling 83-10, <u>Titles II and XVI: Determining Capability to Do Other Work – the Medical-Vocational Rules of Appendix 2</u>, 1983 WL 31251, at *6 (1983) ("SSR 83-10"))). Plaintiff thus deems the ALJ's error "harmful" (id.), because the RFC's limitation to "frequent" interaction with coworkers and supervisors (Tr. 24) "conflicts with the [consultant]s' findings that [Plaintiff] would do best in settings requiring 'minimal social interaction'" (Docket Entry 13 at 16 (quoting Tr. 48, 64)). Those contentions ultimately lack merit.

For benefits applications filed on or after March 27, 2017 (such as Plaintiff's (<u>see</u> Tr. 128-29)), the SSA has enacted substantial revisions to the regulations governing the evaluation of opinion evidence. <u>See</u> Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). Under the new regulations, ALJs need not assign an evidentiary weight to medical opinions and prior administrative medical findings or accord special deference to treating source opinions. <u>See</u> 20 C.F.R. § 404.1520c(a) (providing that ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a

10

claimant's] medical sources").[7]  Instead, an ALJ must determine and "articulate in [the] . . . decision how <u>persuasive</u> [he or she] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record."  20 C.F.R. § 404.1520c(b) (emphasis added).  Moreover, when a medical source provides more than one opinion or finding, the ALJ will evaluate the persuasiveness of such opinions or findings "together in a single analysis" and need not articulate how he or she considered those opinions or findings "individually."  20 C.F.R. § 404.1520c(b)(1).

In evaluating the persuasiveness of an opinion or finding, the SSA deems supportability and consistency "the most important factors" and thus the ALJ must address those two factors in evaluating the persuasiveness of an opinion or a finding.  20 C.F.R. § 404.1520c(b)(2).[8]  The ALJ must only address the three other persuasiveness factors — the nature and extent of the medical

---

[7]  The new regulations define a "medical opinion" as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the abilities to perform the physical, mental, or other demands of work activity or to adapt to environmental conditions.  20 C.F.R. § 404.1513(a)(2).  Those regulations also define a "prior administrative medical finding" as a "finding, other than the ultimate determination about whether [a claimant is] disabled, about a medical issue made by [the SSA's] Federal and State agency medical and psychological consultants at a prior level of review."  20 C.F.R. § 404.1513(a)(5).

[8]  "Supportability" means "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation."  Revisions to Rules, 82 Fed. Reg. at 5853; <u>see also</u> 20 C.F.R. § 404.1520c(c)(1).  "Consistency" denotes "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim."  Revisions to Rules, 82 Fed. Reg. at 5853; <u>see also</u> 20 C.F.R. § 404.1520c(c)(2).

source's relationship with the claimant and area of specialization, as well as the catch-all "other factors that tend to support or contradict" the opinion/finding, 20 C.F.R. § 404.1520c(c)(3)-(5) — when the ALJ finds two or more opinions or findings about the same issue "[e]qually persuasive" in terms of supportability and consistency, 20 C.F.R. § 404.1520c(b)(3).

Here, the Commissioner "concedes that the ALJ in this instance did not expressly evaluate the state agency [psychological] consultants' prior administrative findings in the decision" (Docket Entry 16 at 7 (referencing Tr. 27-29)), but characterizes that error by the ALJ as "harmless where, as here, the prior administrative findings were for the most part consistent with the ALJ's findings" (id. (citing Kersey v. Astrue, 614 F. Supp. 2d 679, 696 (W.D. Va. 2009))). According to the Commissioner, the initial-level consultant "did not assess any specific limitations with respect to interacting with others" (id. at 8 (citing Tr. 47)), and the reconsideration-level consultant "found that [Plaintiff] could perform simple, routine and repetitive tasks in a low stress, low social setting . . . [but] did not define the term 'low social setting'" (id. (citing Tr. 60)).

Although the Commissioner's argument glosses over the consultants' finding that Plaintiff "would perform best in settings that require minimal social interaction, especially with unfamiliar persons" (Tr 48, 64 (emphasis added)), doubt exists whether such an

opinion about Plaintiff's <u>ideal</u> workplace setting constitutes a <u>limitation</u> or <u>restriction</u> to such a setting that the ALJ must address, <u>see</u> <u>Jude v. Commissioner of Soc. Sec.</u>, No. 2:20CV3579, 2022 WL 612152, at * (S.D. Ohio Mar. 2, 2022) (unpublished) (rejecting the plaintiff's argument that ALJ erred by failing to adopt consultative medical examiner's opinion that the plaintiff "would <u>do best</u> limited to 50% sitting and standing intermittently," noting that "[a]n assessment of difficulty with an activity does not constitute a definitive functional limitation that the ALJ was required to incorporate into the RFC," as well as that examiner's opinion did not amount to statement that "[the p]laintiff was *unable* to sit for more than 50% of a workday" (first emphasis added) (internal quotation marks omitted)).

Moreover, even assuming that the consultants' opinions that Plaintiff "would perform best in settings that require minimal social interaction" (Tr. 48, 64) constituted a <u>restriction</u> to minimal social interaction (which would conflict with the RFC's limitation to "frequent" interaction with coworkers and supervisors (Tr. 24)), the Court should find any error by the ALJ in failing to reconcile that conflict harmless, <u>see generally</u> <u>Fisher v. Bowen</u>, 869 F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"). As the

13

Commissioner argues, "[b]ecause none of the three occupations identified [by the VE and adopted at step five of the SEP by the ALJ] require[s] any notable social interaction (id. at 9; see also id. at 8-9 (citing Dictionary of Occupational Titles ("DOT"), No. 919.687-014 ("Cleaner II"), 1991 WL 687897 (G.P.O. 4th ed. rev. 1991), DOT, No. 209.587-034 ("Marker"), 1991 WL 671802, DOT, No. 779.687-038 ("Waxer"), 1991 WL 680755)), any error in not evaluating the state agency psychologists' findings . . . was harmless" (id. (citing Able v. Colvin, No. 14CV1078, 2016 WL 1229086, at *3 (M.D.N.C. Mar. 28, 2016) (unpublished) (Osteen, Jr., C.J.), and Whitehorne v. Commissioner of Soc. Sec., No. 19-0256, 2020 WL 5077025, at *4 (W.D.N.Y. Aug. 27, 2020) (unpublished)).) For the reasons that follow, the Commissioner's contentions demonstrate that the ALJ's above-described error qualifies as harmless under the circumstances presented by this case.

The DOT codes for all three of the jobs the ALJ ultimately found Plaintiff able to perform contain a fifth digit (or "People" rating) of "8," DOT, No. 919.687-014 ("Cleaner II"), 1991 WL 687897, DOT, No. 209.587-034 ("Marker"), 1991 WL 671802, and DOT, No. 779.687-038 ("Waxer"), 1991 WL 680755, reflecting the lowest possible level of human interaction that exists in the labor force," Fletcher v. Colvin, No. 1:15CV166, 2016 WL 915196, at *10 (M.D.N.C. Mar. 4, 2016) (unpublished), recommendation adopted, slip op. (M.D.N.C. Mar. 28, 2016) (Osteen, Jr., C.J.). Moreover, all

14

three jobs rate the job task of "Taking Instructions – Helping" as "Not Significant" and reflect the tasks of "Talking" and "Hearing" as "Not Present - Activity or condition does not exist." DOT, No. 919.687-014 ("Cleaner II"), 1991 WL 687897; DOT, No. 209.587-034 ("Marker"), 1991 WL 671802; DOT, No. 779.687-038 ("Waxer"), 1991 WL 680755. Consequently, Plaintiff has not shown that remand for the ALJ to include limitations in the RFC to accommodate the consultants' restriction to "minimal social interaction" (Tr. 48, 64) would result in a different outcome in his case, see Ridley G. v. Commissioner of Soc. Sec., No. 1:20CV773, 2021 WL 4307507, at *8, *13 (N.D.N.Y. Sept. 22, 2021) (unpublished) (deciding that RFC restriction to no interaction or tandem tasks with coworkers harmonizes with jobs with DOT level 8 interaction); Scott C. v. Commissioner of Soc. Sec., No. 2:20CV109, 2021 WL 2682276, at *4-5 (D. Vt. June 30, 2021) (unpublished) (deeming ALJ's failure to include state agency psychological consultants' limitation to brief and infrequent interactions with supervisors and coworkers in RFC harmless because "level 8 interaction is compatible with an RFC limiting a claimant to only superficial contact with coworkers, supervisors, and the public" (brackets and internal quotation marks omitted) (emphasis added)); Wilson v. Saul, No. 1:19CV1089, 2020 WL 6293132, at *4 (M.D.N.C. Oct. 27, 2020) (unpublished) ("[E]ven assuming the ALJ erred here by failing to include additional social limitations in the RFC . . ., any error would be harmless because

15

the jobs the ALJ concluded that [the p]laintiff could perform do not require significant social interactions."), <u>recommendation adopted</u>, slip op. (M.D.N.C. Nov. 24, 2020) (Biggs, J.); <u>Eldridge v. Berryhill</u>, No. CV 16-5289, 2018 WL 1092025, at *2 (W.D. Ark. Feb. 28, 2018) (unpublished) (holding jobs categorized by <u>DOT</u> as involving level 8 interaction consistent with either restriction to "<u>limited</u> contact with the general public" (in RFC) or "<u>incidental</u> contact with co-workers" (in hypothetical question to VE) (emphasis added)); <u>Alie v. Berryhill</u>, No. 4:16CV1353, 2017 WL 2572287, *16 (E.D. Mo. June 14, 2017) (unpublished) (ruling that "[l]evel 8 interaction is compatible with a[n] RFC limiting a claimant to only <u>superficial</u> contact with coworkers, supervisors, and the public" (emphasis added)); <u>Knott v. Colvin</u>, No. 1:13CV332, 2014 WL 2453302, at *6 (M.D.N.C. June 2, 2014) (unpublished) (Schroeder, J.) (deeming ALJ's failure to include any interaction limitations in RFC to account for state agency psychological consultant's opinion that the plaintiff required work in "low social setting" harmless error, because two of three jobs cited by VE and adopted by ALJ "d[id] not require a high degree of social interaction" (citing <u>inter alia</u> <u>DOT</u>, No. 209.587-034 ("Marker"), 1991 WL 671802)); <u>Flaherty v. Halter</u>, 182 F. Supp. 2d 824, 851 (D. Minn. 2001) (finding jobs with "not significant" levels of social interaction under the <u>DOT</u> compatible with ALJ's limitation to "<u>brief superficial</u> type of contact with co-workers and supervisors and

16

members of the public as a part of the job task[s]" (emphasis added)).

In sum, Plaintiff's first issue on review fails to demonstrate prejudicial error by the ALJ.

## 2. VA Disability Rating Decision

In Plaintiff's second and final assignment of error, he maintains that "[t]he ALJ failed to appropriately evaluate the VA disability rating decision." (Docket Entry 13 at 17 (bold font and single-spacing omitted); see also Docket Entry 18 at 5-8.) More specifically, Plaintiff asserts that "the ALJ rejected the VA disability rating decision [finding Plaintiff 100% disabled as of June 25, 2019, due to service-connected schizoaffective disorder (see Tr. 141-42)] because [the ALJ] was not sure if she had all the evidence the rating was based upon, because [Plaintiff]'s condition had been mitigated by treatment, and because of his daily activities[, b]ut [that] those specific reasons for [the ALJ's] rejection of the VA disability rating decision, are neither persuasive nor valid when the case is critically examined." (Docket Entry 13 at 20-21 (citing Tr. 29).) Although Plaintiff concedes that, "in cases filed on or after March 27, 2017, a new regulation indicated the SSA will not provide any analysis in a decision about a decision made by any other governmental agency . . . about whether a claimant is disabled" (id. at 18 (citing 20 C.F.R. § 404.1504)), as well as that "the new regulation

17

applies" to Plaintiff's case (id.), Plaintiff nonetheless asserts
that, "in rulings made after the application of the new regulation,
the courts have determined that[,] although a disability decision
by another entity does not bind the SSA, there is a 'default rule'
that an ALJ must give 'substantial weight' to another agency's
decision" (id. at 19 (citing Kiser v. Saul, 821 F. App'x 211, 215
(4th Cir. 2020) (in turn quoting Bird v. Commissioner of Soc. Sec.
Admin., 699 F.3d 337, 343 (4th Cir. 2012)))), and "may afford
another agency's disability determination less than substantial
weight only if the ALJ provides 'persuasive, specific, and valid
reasons for doing so that are supported by the record'" (id.
(quoting Kiser, 821 F. App'x at 215 (in turn citing Woods v.
Berryhill, 888 F.3d 686, 692 (4th Cir. 2018)))). Plaintiff has not
established grounds for relief.

In the Bird decision, the United States Court of Appeals for
the Fourth Circuit addressed for the first time the "weight that
the SSA must afford to a VA disability rating." Bird, 699 F.3d at
343. After noting that the applicable regulation provided that the
VA's "decision [wa]s not binding on the SSA," id. (citing 20 C.F.R.
§ 404.1504), and reviewing the "varying degrees of evidentiary
significance" other circuits afford VA disability ratings, id., the
Fourth Circuit held as follows:

> The VA rating decision reached in [the plaintiff's] case
> resulted from an evaluation of the same condition and the
> same underlying evidence that was relevant to the
> decision facing the SSA. Like the VA, the SSA was

18

required to undertake a comprehensive evaluation of [the plaintiff's] medical condition. <u>Because the purpose and evaluation methodology of both programs are closely related, a disability rating by one of the two agencies is highly relevant to the disability determination of the other agency</u>. Thus, we hold that, in making a disability determination, the SSA must give <u>substantial weight</u> to a VA disability rating. However, because the SSA employs its own standards for evaluating a claimant's alleged disability, and because the effective date of coverage for a claimant's disability under the two programs likely will vary, an ALJ may give less weight to a VA disability rating when the record before the ALJ <u>clearly demonstrates</u> that such a deviation is appropriate.

<u>Id.</u> (emphasis added).

Following <u>Bird</u>, the Fourth Circuit further clarified "what an ALJ must do" to clearly demonstrate the appropriateness of a deviation from <u>Bird</u>'s substantial weight standard in a case involving an NCDHHS disability determination:

We now conclude, consistent with our sister circuits, that in order to demonstrate that it is "appropriate" to accord less than "substantial weight" to an NCDHHS disability decision, an ALJ must give "<u>persuasive, specific, valid reasons for doing so that are supported by the record</u>."

<u>Woods</u>, 888 F.3d at 692 (quoting <u>McCartey v. Massanari</u>, 298 F.3d 1072, 1076 (9th Cir. 2002)) (emphasis added); <u>see also</u> Social Security Ruling 06-03p, <u>Titles II and XVI: Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies</u>, 2006 WL 2329939, at *6-7 (Aug. 9, 2006) ("SSR 06-03p") ("[E]vidence of a disability decision by another governmental . . . agency cannot be

19

ignored and must be considered," and "the [ALJ] should explain the consideration given to these decisions in the notice of decision").

For benefits claims filed on or after March 27, 2017 (such as Plaintiff's (see Tr. 128-29)), the SSA has amended 20 C.F.R. § 404.1504 and rescinded SSR 06-03p. See 82 Fed. Reg. 5844 (Jan. 18, 2017); 82 Fed. Reg. 15263-01 (Mar. 27, 2017). The new regulation states that the SSA "will not provide any analysis in [its] determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits," but "will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that [it] receive[s] as evidence in your claim." 20 C.F.R. § 404.1504 (emphasis added). Coordinately, in rescinding SSR 06-03p, the SSA noted that, for claims filed on or after March 27, 2017, ALJs "will not provide any articulation about their consideration of decisions from other governmental agencies and nongovernmental entities because this evidence is inherently neither valuable nor persuasive." 82 Fed. Reg. 15263-01 (emphasis added).

Notwithstanding the above-described change in the applicable regulation, the ALJ here evaluated Plaintiff's VA disability rating decision under the Bird "substantial weight" standard as follows:

> The evidence in the record includes disability ratings assessed by the [VA]. The current SSA rules do not require an evaluation of a [VA] disability rating. However, the [ALJ] is required to give substantial weight

20

to such a rating unless the record "clearly demonstrates" that a deviation is appropriate. [Bird v. Commissioner, 699 F.3d 337 (4th Cir. 2012)]. Even though opinions are no longer "weighed" under [SSA] regulations, some analysis is warranted since the evidence shows that a deviation from Bird is appropriate as is clearly demonstrated by the evidence. It should be noted that the [ALJ] is limited to establishing a disability decision based on the current record in evidence. It is unclear if the current record includes all of the evidence considered by the [VA], such as service records. The evidence in the current record shows that the impairment for which [Plaintiff] received disability rating, schizoaffective disorder has been mitigated with treatment. The evidence does not support finding that [Plaintiff] is incapable of any work, as is reflected by a 100% disability rating. For example, in July 2018 [Plaintiff] reported that he enjoyed riding bikes, video games, and was able to play the guitar. He was noted to be appropriately dressed and well groomed. His mood was normal and his affect appropriate. He had adequate concentration and his recent and remote memory were intact. He was able to complete daily living skills. In December 2019, [Plaintiff] was noted to be well groomed and he had driven himself to his appointment. His mood was anxious, but he was polite and cooperative. [Plaintiff] reported that his daily activities consisted of watching television, listening to music, and talking to his family sometimes. He reported that he adequately performed self-care and a few household chores. He was able to drive and manage his own money. His immediate retention and recall were noted to be somewhat below average. His recent and remote memory were fair and his fund of knowledge below average.

(Tr. 28-29 (most internal parenthetical citations omitted) (emphasis added).)

a.  **Applicability of Bird and Woods**

As an initial matter, Plaintiff's reliance on Kiser for the proposition that, despite "application of the new regulation, the courts have determined that . . . there is a 'default rule' that an ALJ must give 'substantial weight' to another agency's decision"

21

(id. at 19 (citing Kiser, 821 F. App'x at 215)), falls short.  In Kiser, the plaintiff had filed his application for benefits in December 2012, Kiser, 821 F. App'x at 214, and thus SSR 06-3p and the prior version of Section 404.1504 (as well as the Bird and Woods decisions interpreting those authorities) applied to his claim, see Kiser, 821 F. App'x at 215.  Kiser did not hold that the Bird/Woods "substantial weight" standard should continue to apply to claims filed on or after March 27, 2017, let alone that Bird/Woods invalidated the new version of Section 404.1504.  See id.

Indeed, the Fourth Circuit has not yet squarely addressed the continued applicability of Bird/Woods to claims filed on or after March 27, 2017, see Wright v. Kijakazi, No. 3:20CV201, 2021 WL 3432909, at *2 (W.D.N.C. Aug. 5, 2021) (unpublished), and a split of authority exists regarding the matter among the district courts within the Fourth Circuit, compare Pizarro v. Kijakazi, No. 5:21CV46, 2022 WL 966823, at *4 (E.D.N.C. Mar. 30, 2022) (unpublished) (deeming Bird "substantial weight" standard no longer applicable to claims filed on or after March 27, 2017, and noting "weight of authority favor[ed] th[at] approach"), Rogers v. Commissioner of Soc. Sec., No. 3:20CV206, 2022 WL 135310, at *3 (W.D.N.C. Jan. 13, 2022) (unpublished) (same, and noting that "a trend [exists] in district courts across the country – including those in the Second, Third, Fifth, Sixth, Seventh, Ninth, and

22

Eleventh Circuits – that the revised regulations trump prior case law"), appeal filed, No. 22-1264 (4th Cir. Mar. 14, 2022), Yonnes S. v. Saul, No. 1:20CV819, 2021 WL 2767298, at *9 (E.D. Va. Mar. 31, 2021) (unpublished) (same), and Johnson v. Saul, C.A. No. 6:19-1155, 2020 WL 6265092, at *3 (D.S.C. June 3, 2020) (unpublished) (same), recommendation adopted, 2020 WL 5810523 (D.S.C. Sept. 30, 2020) (unpublished), with Carter v. Kijakazi, No. 1:20CV252, 2021 WL 3915009, at *4 (M.D.N.C. Sept. 1, 2021) (unpublished) (Peake, M.J.) (holding that, because "[t]he Fourth Circuit ha[d] not reconsidered [Woods, Bird, or DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983),] since the SSA's 2017 revisions, [those cases] therefore remain in full force"), recommendation adopted, 2021 WL 4412374 (M.D.N.C. Sept. 27, 2021) (unpublished) (Osteen, Jr., J.), VanCleave v. Saul, No. 1:20CV144, 2021 WL 2078004, at *3 (W.D.N.C. May 24, 2021) (unpublished) (same), and Rose v. Saul, No. 7:19CV91, 2020 WL 4740479, at *2-4 (E.D.N.C. Aug. 14, 2020) (unpublished) (same).[9]

---

[9] More recent decisions from district courts within the Fourth Circuit have uniformly found the Bird/Woods "substantial weight" rule inapplicable to claims filed on or after March 27, 2017. See, e.g., Lisa Teresa S. v. Kijakazi, No. 3:21CV480, 2022 WL 3269955, at *14 (E.D. Va. July 26, 2022) (unpublished), recommendation adopted, 2022 WL 3229345 (E.D. Va. Aug. 10, 2022) (unpublished); Anthony A. v. Kijakazi, No. 3:20CV417, 2022 WL 982237, at *5 (E.D. Va. Mar. 30, 2022) (unpublished); Engle v. Commissioner of Soc. Sec., No. 5:20CV194, 2022 WL 902742, at *6 (W.D.N.C. Mar. 28, 2022) (unpublished); Lane v. Commissioner of Soc. Sec., No. 1:20CV267, 2022 WL 851728, at *3 (W.D.N.C. Mar. 22, 2022) (unpublished); Anderson v. Commissioner of Soc. Sec. Admin., No. 1:20CV329, 2022 WL 702437, at *2-3 (W.D.N.C. Mar. 8, 2022) (unpublished); Davis v. Commissioner of Soc. Sec., No. 3:20CV339, 2022 WL 680211, at *7 (W.D.N.C. Mar. 7, 2022) (unpublished); McClellon v. Kijakazi, No. 6:20CV3216, 2021 WL 6133847, at *2-8 (D.S.C. Dec. 28, 2021) (unpublished); Gerald v. Kijakazi, No. 6:20CV3446, 2021 WL 8014692, at *11 (D.S.C. Oct. 27, 2021) (unpublished), recommendation adopted
(continued...)

The Court should follow the weight of authority and find that the holdings in <u>Bird</u> and <u>Woods</u> that VA disability ratings merit "substantial weight," <u>Bird</u>, 699 F.3d at 343, and that ALJs can only deviate from that weight by providing "persuasive, specific, valid reasons for doing so," <u>Woods</u>, 888 F.3d at 692, do not apply to benefits claims filed on or after March 27, 2017, for reasons well-explained by a neighboring district court:

> In holding that an ALJ must explain the weight given to a decision given by other agencies, both <u>Bird</u> and <u>Woods</u> relied upon the directives set forth in § 404.1504 and SSR 06-03p, then in force. <u>See</u> 699 F.3d at 343; 888 F.3d at 691-693. <u>Woods</u>, however, expressly noted that the prior version of § 404.1504 "<u>only</u> applies to claims filed before March 27, 2017." <u>Woods</u>, 888 F.3d at 691 n.1 (emphasis added). And, "<u>[f]or claims filed on or after March 27, 2017</u>, ALJs must still consider the existence of disability decisions by other governmental or nongovernmental entities, and any evidence underlying those decisions, <u>but are no longer required 'to provide written analysis about how they consider the decisions from other governmental agencies</u>.'" <u>Id.</u> (quoting 82 Fed. Reg. at 5,848) (emphasis added).
>
> Thus, based on the plain language of § 404.1504, and the express recognition in <u>Woods</u> of the change in the requirements in the new version of the regulation, further explanation regarding the weight given to the VA decision was not required. In so holding, the court recognizes that this marks a divergence from some prior unpublished decisions in this district. However, the foregoing analysis and the weight of authority favors the instant approach.

<u>Pizarro</u>, 2022 WL 966823, at *4.

---

[9] (...continued)
<u>sub nom</u>, <u>Milton G. v. Kijakazi</u>, 2022 WL 669626 (D.S.C. Mar. 7, 2022) (unpublished).

Accordingly, even though the ALJ evaluated the VA disability rating decision under the "substantial weight" standard of <u>Bird</u> (<u>see</u> Tr. 28), under the applicable version of Section 404.1504, the Court need only determine whether the ALJ "consider[ed] all of the supporting evidence underlying the [VA]'s decision that [the ALJ] receive[d] as evidence in [Plaintiff's] claim," 20 C.F.R. § 404.1504. The ALJ's decision makes clear that she considered all evidence in the record, including Plaintiff's VA records dating from September 2006 to the date of the ALJ's decision. (<u>See</u> Tr. 22-29.) Section 404.1504 requires nothing more of the ALJ.

**b.  Sufficiency of ALJ's Rationale for Rejecting VA Decision**

Moreover, even if the <u>Bird</u>/<u>Woods</u> "substantial weight" standard remained applicable to Plaintiff's claim, he has not shown that the ALJ's analysis of the VA disability rating decision falls short of that standard. Plaintiff contests all three of the ALJ's reasons for rejecting the VA disability rating decision as "neither "persuasive nor valid" under <u>Bird</u>/<u>Woods</u> (Docket Entry 13 at 21), but none of those contentions carry the day.

Plaintiff first challenges the ALJ's observation that "[i]t [wa]s unclear if the current record include[d] all of the evidence considered by the [VA], such as service records" (Tr. 29), and argues that, because Plaintiff "[wa]s mentally ill, was unrepresented, and had no face-to-face meeting with the ALJ, the ALJ's duty [to develop the record] was heightened, and she should

25

have requested the information she deemed necessary from the [VA] to make an informed decision whether a deviation from *Bird* was warranted." (Docket Entry 13 at 22; <u>see also</u> Docket Entry 18 at 5.) In Plaintiff's view, "'[p]rejudice results where the [C]ommissioner[']s decision "might reasonably have been different had the evidence been before [her] when the decision was rendered."'" (Docket Entry 13 at 22 (quoting <u>Stahl v. Astrue</u>, No. 2:07CV19, 2018 WL 2565895, at *6 (N.D.W. Va. Nov. 1, 2007) (unpublished) (in turn quoting <u>King v. Califano</u>, 599 F.2d 597, 599 (4th Cir. 1979))).)

"[T]he ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate." <u>Cook v. Heckler</u>, 783 F.2d 1168, 1173–74 (4th Cir. 1986) (citations omitted). The ALJ discharges her duty to develop the record where "the record is adequate to make a determination regarding a disability claim." <u>France v. Apfel</u>, 87 F. Supp. 2d 484, 490 (D. Md. 2000); <u>accord Kersey</u>, 614 F. Supp. 2d at 693. Accordingly, in order to demonstrate that the ALJ failed to develop the record, a claimant must show that "evidentiary gaps" existed that prejudiced his or her rights, <u>Blankenship v. Astrue</u>, No. 3:11CV5, 2012 WL 259952, at *13 (S.D.W. Va. Jan. 27. 2012) (unpublished) (citing <u>Marsh v. Harris</u>, 632 F.2d 296, 300 (4th Cir. 1980)), and that he or she

26

"could and would have adduced evidence that might have altered the result,'" id. (quoting Carey v. Apfel, 230 F.3d 131, 142 (5th Cir. 2000)).

Here, Plaintiff has simply not shown that the ALJ did not fulfill her duty to develop the record. The ALJ's statement that she lacked clarity whether "the current record include[d] all of the evidence considered by the [VA], such as service records" (Tr. 29 (emphasis added)) merely recognized the fact that the time period covered by the VA's disability rating decision, i.e., from September 2006 (the month Plaintiff began his military service) to June 25, 2019 (the date of the VA's decision) (see Tr. 141-42), differed from the relevant time period considered by the ALJ, i.e., from December 31, 2014 (Plaintiff's amended onset date) to December 31, 2019 (Plaintiff's date last insured), as well as that the VA may have considered Plaintiff's non-medical service records in reaching its decision. Significantly, the ALJ did not state that she found the record inadequate to evaluate the persuasiveness of the VA's decision. Accordingly, Plaintiff has not shown that the ALJ failed to fulfill her duty to develop the record.

Moreover, Plaintiff has not shown that the ALJ's alleged failure to seek out additional documents purportedly relied upon by the VA in issuing its disability rating decision prejudiced Plaintiff in any way, as he has neither identified any specific records the ALJ should have sought nor explained how the contents

27

of those unidentified documents would have changed the outcome of Plaintiff's claim. That failure precludes relief. See Stahl, 2018 WL 2565895, at *6 ("[T]he [c]ourt finds [the plaintiff] was not prejudiced by the ALJ's failure to obtain the [updated medical] records[, because] . . . the [plaintiff] fail[ed] to demonstrate to the [c]ourt how [the] 'updated' [records] might have reasonably changed the ALJ's determination . . . .").

Next, Plaintiff objects to the ALJ's finding that "[t]he evidence in the current record shows that the impairment for which [Plaintiff] received [a] disability rating, schizoaffective disorder[,] has been mitigated with treatment" (Tr. 29), contending that "the question is not only whether there has been mitigation, but whether any improvement is sufficient to allow the ability to work on a regular and continuing basis." (Docket Entry 13 at 24; see also Docket Entry 18 at 5-7.) In support of his argument that he "continue[d] to experience depression, anxiety, paranoia, and auditory hallucinations, despite any improvement in his symptoms" (Docket Entry 13 at 24-25), Plaintiff describes evidence in the record he believes shows that his "mental health impairments [we]re [not] sufficiently improved to allow him to perform ongoing work activity on a regular and continuing basis" (id. at 26 (internal quotation marks omitted). (See id. at 24-26 (citing Tr. 474, 476, 479-80, 482, 491, 508, 513, 516, 520, 549, 573, 575, 594, 608, 611, 617, 618, 634, 650-52, 686, 714).)

28

By pointing to record evidence Plaintiff believes conflicts with the ALJ's finding that treatment mitigated Plaintiff's mental impairments, he misinterprets this Court's standard of review. The Court must determine whether substantial evidence, i.e., "more than a mere scintilla of evidence but . . . somewhat less than a preponderance," Mastro, 270 F.3d at 176 (brackets and internal quotation marks omitted), supported the ALJ's mitigation finding, and not whether other record evidence weighed against that finding, see Lanier v. Colvin, No. CV414-004, 2015 WL 3622619, at *1 (S.D. Ga. June 9, 2015) (unpublished) ("The fact that [the p]laintiff disagrees with the ALJ's decision, or that there is other evidence in the record that weighs against the ALJ's decision, does not mean that the decision is unsupported by substantial evidence.").

Moreover, the ALJ supported her mitigation finding with substantial evidence as follows:

> [I]n July 2018[, Plaintiff] reported that he enjoyed riding bikes, video games, and was able to play the guitar. He was noted to be appropriately dressed and well groomed. His mood was normal and his affect appropriate. He had adequate concentration and his recent and remote memory were intact. He was able to complete daily living skills. In December 2019, [Plaintiff] was noted to be well groomed and he had driven himself to his appointment. His mood was anxious, but he was polite and cooperative. [Plaintiff] reported that his daily activities consisted of watching television, listening to music, and talking to his family sometimes. He reported that he adequately performed self-care and a few household chores. He was able to drive and manage his own money.

(Tr. 29 (internal parenthetical citation omitted).) In addition, in the narrative discussion of the medical evidence, the ALJ provided the following analysis supportive of her mitigation finding:

> In the fall of 2018[, Plaintiff] began receiving mental health treatment through the [VA]. The records from November note a diagnosis of cannabis abuse. [Plaintiff] was started on medication. When he returned in January 20[19], [Plaintiff] said he was again living in his vehicle, but was trying to earn his keep by cooking and cleaning for an acquaintance. [Plaintiff] was noted to be alert, oriented, cooperative, and pleasant. His affect was bright and his dress and hygiene were fair. Medication management records from January note [Plaintiff] to be doing fairly well. The medications were partially effective in regard to his mood swings, paranoia, and anxiety. Mood swings still occurred, but at a slower pace. His auditory hallucinations had also decreased. However, when he returned in March he was uncooperative and had a poor attention span. He said it was one of those days when he did not want to talk. When he returned in May he was again noted to be doing fairly well. He also said he had cut down on marijuana use.
>
> . . .
>
> Treatment records from after the date last insured note [Plaintiff] to be homeless again in March 2020. In April he reported he continued to hear voices, but did not want a medication change because they were tolerable. He was noted to be calm and cooperative. He reported being in a good mood. Memory and concentration were fair. His cannabis use was in remission according to the reports of [Plaintiff].
>
> [Plaintiff] has a number of diagnosed mental disorders, although schizoaffective disorder appears to be the most prominent in the record. Viewing the record as a whole, [Plaintiff] has not received sustained mental health treatment until relatively recently. It is clear from the treatment records available that [Plaintiff] responds well to treatment with improvements in his mood.

30

(Tr. 26-27 (internal parenthetical citations omitted) (emphasis added).) That analysis easily clears the substantial evidence threshold.[10]

Lastly, Plaintiff challenges the ALJ's determination that "[t]he evidence d[id] not support finding that [Plaintiff wa]s incapable of any work" (Tr. 28), in light of Plaintiff's ability to engage in a variety of daily activities. (Docket Entry 13 at 22-23, 26-28; see also Docket Entry 18 at 7.) In that regard, Plaintiff notes that "'[a]n ALJ may not consider the *type* of activities a claimant can perform without also considering the *extent* to which [he] can perform them'" (Docket Entry 13 at 22 (quoting Woods, 888 F.3d at 694)), and asserts that "[t]he ALJ's failure to properly consider the extent to which [Plaintiff] was able to perform his activities undercuts the validity of this

_____

[10] Plaintiff adds the following argument in a footnote:

> The ALJ rejected [consultative psychological examiner] Dr. [Ernest Kalu] Akpaka's findings because [the ALJ] alleged they were vague[ (Tr. 29)], but they are consistent with the findings of the other examining and non-examining mental health sources, including [consultative psychological examiner] Dr. [Atul] Kant[e]saria's evaluation[ (Tr. 476)], and the [state a]gency psychologists' opinions[ (Tr.48, 64)], all of whom found greater social limitations than the ALJ did[(Tr. 24)]. The ALJ failed to evaluate the consistency of the mental health opinions when she rejected them. [(Tr. 28-29.)]

(Docket Entry 13 at 24 n.90.) Plaintiff's argument glosses over the ALJ's findings that the opinions Drs. Akpaka and Kantesaria "[we]re somewhat consistent with the exam notes, but more treatment records indicate [Plaintiff]'s symptoms are mitigated with treatment" (Tr. 28 (emphasis added)). Moreover, given the discussion in connection with Plaintiff's first issue on review regarding the minimal social interaction requirements of the three jobs adopted by the ALJ at step five of the SEP, Plaintiff has not shown that remand for the ALJ to re-evaluate the social interaction opinions of Drs. Akpaka and Kantesaria would lead to a different outcome in his claim.

31

reason for rejecting the VA disability rating determination" (id.).
In Plaintiff's view, his "daily activities were minimal,
particularly when he was homeless, which was most of the relevant
time period, and there [wa]s little to no evidence about how
frequently he performed daily activities, or how he accomplished
those tasks, i.e., whether he was able to complete them at one
time." (Id. at 26-27 (citing Tr. 445, 462, 478, 494, 496, 502,
511, 517, 523, 543, 564, 566, 569, 571, 579, 597, 602-03, 606,
616-17, 620, 623, 627, 647) (footnote omitted).) Plaintiff thus
faults the ALJ for failing to "acknowledge the limited extent of
[Plaintiff]'s activities or explain how those activities showed
that he could sustain a full-time job." (Id. at 27.)

The ALJ here observed that, despite Plaintiff's claim of
disabling mental symptoms, he remained able to cook and clean to
"earn his keep" while staying with an acquaintance (Tr. 26; see
also Tr. 498, 516), ride a bike (see Tr. 26, 29; see also Tr. 480),
play video games (see Tr. 23, 24, 26, 29; see also Tr. 433, 480),
play the guitar (see Tr. 23, 24, 26, 29; see also Tr. 480), drive
(see Tr. 23, 24, 26, 29; see also Tr. 166, 175, 433, 516), watch
television (see Tr. 26, 29; see also Tr. 164, 167, 651), listen to
music (see Tr. 26, 29; see also Tr. 651), "talk[] to his family
sometimes" (Tr. 26, 29 (emphasis added); see also Tr. 573, 651),
"adequately perform[] self-care and a few household chores" (Tr.
26, 29 (emphasis added); see also Tr. 164, 165, 433, 482, 651), and

"manage his own money" (Tr. 26, 29; <u>see also</u> Tr. 166, 651). Thus, as emphasized above, the ALJ recognized limitations in Plaintiff's ability to perform daily activities by using words such as "sometimes," "adequately," and "few." With regard to Plaintiff's homelessness, the ALJ expressly noted that Plaintiff "was often noted to be homeless, and at those times he appeared to have difficulty maintaining himself[; h]owever, [he] was frequently noted to have adequate grooming and hygiene during periods he had stable housing." (Tr. 24 (internal parenthetical citation omitted).) Notably, Plaintiff has not detailed which of his daily activities the ALJ overstated (<u>see</u> Docket Entry 13 at 22-23, 26-28) and, as the parallel citations to the record above show, the ALJ's observations find support in the record.

Furthermore, although Plaintiff complains that his ability to engage in those activities does not translate to an ability to perform full-time competitive work (<u>see</u> Docket Entry 13 at 26), the fact that he can complete them provides <u>some</u> evidence of Plaintiff's ability to understand, retain, and follow simple instructions, relate to others, maintain concentration, and adapt and manage himself in a work setting, <u>see</u> <u>Emerson v. Kijakazi</u>, No. 1:21CV307, 2022 WL 1004584, at *16 (M.D.N.C. Apr. 4, 2022) (unpublished) (holding that the "[p]laintiff's ability to engage in [certain daily] activities, even on a somewhat limited basis, provides <u>some</u> support, along with the medical and opinion evidence

discussed by the ALJ, for the ALJ's conclusion that [the p]laintiff's impairments did not prevent her from performing a limited range of light work" (emphasis in original)), recommendation adopted, slip op. (M.D.N.C. May 10, 2022) (Eagles, J.). Moreover, the ALJ's consideration of Plaintiff's ability to engage in daily activities formed just one part of the ALJ's analysis of the intensity, persistence, and limiting effects of Plaintiff's symptoms – the ALJ also considered the type and effectiveness of Plaintiff's treatment, the objective evidence in the record, and the medical opinion evidence (see Tr. 24-29).

Based on the foregoing analysis, Plaintiff's second and final assignment of error falls short.

### III.  CONCLUSION

Plaintiff has not established errors warranting remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for a Judgment Reversing the Decision of the Commissioner of Social Security or Remanding the Cause for a Rehearing (Docket Entry 12) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 15) be granted, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

October 7, 2022

34